UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 2:17-cr-00180-JAD-PAL |
|---|---|
| Plaintiff, | **ORDER** |
| v. | **AND** |
| EVERLY JAMES, | **REPORT OF FINDINGS AND RECOMMENDATION** |
| Defendant. | (Mot Dismiss – ECF No. 267) |

Before the court is defendant Everly James' ("James") Motion to Dismiss Indictment (ECF No. 267), which is referred to the undersigned for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has reviewed the motion, co-defendants Demani Dancy, Keenan St. Hillaire, Channing Williams, and Korregan Washington's Joinders (ECF Nos. 268, 271, 274, 280), the Government's Response (ECF No. 278) and Sealed Exhibit (ECF No. 279), and James' Reply (ECF No. 303).

**BACKGROUND**

Mr. James and 15 co-defendants are charged in a 13-count Indictment (ECF No. 1) returned June 14, 2017. James is charged with one count of conspiracy to commit transportation of stolen vehicles and wire fraud in violation of 18 U.S.C. § 371. The indictment arises out of a series of events that allegedly occurred from July 2015 to April 2017, involving the sale, transportation, and receipt of stolen vehicles. The indictment alleges 33 overt acts in furtherance of the conspiracy; however, James is only identified in five overt acts occurring from July 11–17, 2015.

On October 5, 2017, James filed a Motion to Suppress (ECF No. 203) ("suppression motion") seeking to suppress all evidence seized during execution of a July 18, 2015 Arizona warrant to search 5215 West Willetta Street, Room 310, Phoenix, Arizona (the "hotel warrant"), and any "fruits of the poisonous tree" attached to the seized items. This location is a room at a

1

1  Red Roof Inn where police learned James was staying on or around the July 2015 dates alleged in
2  the Indictment. The suppression motion also requested an evidentiary hearing pursuant to *Franks*
3  *v. Delaware*, 438 U.S. 154 (1978), to allow James to establish instances of falsehoods or reckless
4  disregard for the truth of information contained in the affidavit supporting the application for the
5  hotel warrant. The government filed a Response (ECF No. 254) stating that, although the
6  government did not concede that *Franks* violations occurred, or that the suppression motion was
7  meritorious, it would not use any of the items obtained from the search during its case-in-chief at
8  trial. The government requested that the suppression motion be denied as moot. The court: (1)
9  denied the suppression motion as moot, (2) precluded the government from introducing any
10 evidence seized pursuant to the hotel warrant during its case-in-chief, and (3) precluded the
11 government from using any additional evidence obtained as a result of the hotel warrant during its
12 case-in-chief under the fruit of the poisonous tree doctrine, *Wong Sun v. United States*, 371 U.S.
13 471 (1963). Feb. 7, 2018 Order (ECF No. 272).

I. **THE PARTIES' POSITIONS**

    A. **James' Motion to Dismiss (ECF No. 267)**

In the current motion, James argues he is entitled to dismissal of the indictment because the government's response to the suppression motion was tantamount to an admission that perjured testimony was used to indict him. Mr. James states that the Arizona officer provided deceptive and blatantly false facts in the hotel warrant affidavit to the issuing judge. Probable cause was therefore lacking to implicate James before the grand jury. He contends the government made no effort to defend the officer's credibility and the prosecution is now aware that James' prosecution was infected with misconduct from the inception of the case. Citing *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974), James argues that due process is violated when a defendant must stand trial on an indictment the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached.

In addition, Mr. James argues the preclusion of evidence related to the hotel warrant has eliminated any credible evidence linking him to the crimes charged in the indictment. James is charged with conspiracy involving overt acts over a six-day period between July 11–17, 2015. He

asks, "if the government is not going to utilize evidence seized from the hotel room, what evidence is left?" Mot. at 4. The government opposed James' Motion to Reopen Detention Hearing (ECF No. 179) because James was found in possession of a laptop and printer that he used to create documents to sell stolen vehicles. *Id*. at 5. Because this evidence is now precluded, James asserts there is "no evidence linking Mr. James unless the government intends to utilize the perjurous [*sic*] statements of their affiant." Mot. at 4.

The motion argues James is entitled to dismissal because the officer made false material statements in the hotel warrant affidavit, and the government conceded it would not use the evidence seized at the hotel, which leaves no evidence linking James to the crimes charged.

### B. The Government's Response (ECF No. 278)

The United States opposes the motion arguing that James' assertions are misguided and wholly speculative, and the motion should therefore be denied. Mr. James speculates he was indicted based on perjured testimony.[1] The government points out that its response to the suppression motion did not concede the merits of the motion. Rather, the government advised it would not use evidence from the hotel warrant and the suppression motion was therefore denied as moot. However, even if the court had granted the suppression motion on its merits, suppression is the remedy for a Fourth Amendment violation. Therefore, Mr. James has already received the relief he sought.

Additionally, the government cites *United States v. Calandra*, 414 U.S. 338, 348 (1974), for the proposition that the Supreme Court has never interpreted the exclusionary rule to proscribe the use of illegally seized evidence in all proceedings or against all persons. Thus, even if the grand jury heard evidence related to the hotel warrant, it would not automatically result in a dismissal of the indictment. Citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988), the government maintains that a defendant seeking dismissal must establish that allegedly tainted evidence substantially influenced the grand jury's decision to indict or show grave doubt that the

---

[1] The government filed a sealed copy of the grand jury transcript at the same time it filed its response. Sealed Exhibit (ECF No. 279). The response does not discuss or cite any portion of the sealed transcript of evidence presented to the grand jury. Because the court finds that the motion may be decided on the moving and responsive papers and supporting exhibits, an *in camera* review of the transcript was not conducted.

3

decision to indict was free from the substantial influence of such violations. James cannot meet this burden.

The flaws in James' arguments are apparent, even without delving into the grand jury proceedings. James contends the indictment was based solely on perjured testimony due to allegedly false statements contained the hotel warrant affidavit. "That would require this Court, and ergo the Grand Jury, to believe that that *one* search warrant compromises the entirety of the investigation against the Defendant." Resp. at 7. James' contention is undermined by his own exhibits to his suppression motion, which reveal a larger investigation of James and his coconspirators. *See* Suppression Mot. Exs. A, C–J (ECF No. 203-1). Mr. James was provided discovery in addition to the hotel warrant setting forth his role in the charged conspiracy, including police reports detailing surveillance and other aspect of the investigation, witness statements, summaries of witness statements, copies of fraudulent ads for the stolen vehicles, and more. *See* Gov't Resp. Ex. 1 (ECF No. 278-1). This discovery describes in detail what officers learned during the course of the investigation that resulted in James' arrest along with several co-conspirators. Thus, the evidence against Mr. James that resulted in his indictment was not limited to "*one* search warrant of *one* hotel room." *Id*. at 8. Accordingly, the motion fails to demonstrate that James' indictment is the result of perjured testimony or that he has suffered a due process violation, and the court should deny the motion.

### C. James' Reply (ECF No. 303)

In his reply, James argues the government's characterization of a two-year multi-jurisdictional investigation is a "misnomer" because the discovery establishes that the federal investigation lasted a mere four months.[2] Mr. James was not included in the federal investigation known as "Operation Blood Hertz" until March 2017, approximately one month before the investigation closed. The Las Vegas Metropolitan Police Department's Viper Auto Theft Task Force ("LVMPD") sent a letter to the Mesa, Arizona Police Department requesting information

---

[2] Mr. James cites multiple discovery documents to support his arguments, but the Reply did not attach the documents. Reply at 2–3 (citing discovery pp. 29904, 36964, 36967, 38836, 38840). The Reply only refers to the discovery with bates numbers, not exhibit letters or numbers. Thus, it does not appear that James intended to attach these documents for the court's review.

4

regarding a stolen vehicle report in March 2017. During its review of the Arizona case files, Nevada law enforcement officers found a piece of evidence linking James and the suspected co-conspirators. An affidavit supporting an application for search warrant stated that James' computer, which was seized during the execution of the hotel warrant, contained a scanned copy of the title to a 1998 Chevrolet Monte Carlo. Reply at 3 (citing Discovery p. 38840). Co-defendant Channing Williams purchased the Monte Carlo in July 2015 and signed the title with his true name. The title served as a template for which defendants overlaid information for five stolen vehicles. James asserts the Nevada affidavit shows that the government's belated link to him are the fruits of the poisonous tree obtained through the perjured and false statements in connection with the Arizona hotel warrant.

James argues he can clearly establish that law enforcement's misconduct and deception was utilized to influence the grand jury's decision to indict. Nothing connects the stand alone series of crimes in Arizona to the current conspiracy without the link discovered through perjured testimony in the hotel warrant. As a result, there is no doubt that the tainted evidence was presented to the grand jury which had a substantial influence on the grand jury's decision to indict. The government's response lacks any assurance that the deceitful facts presented to the issuing judge, or the fruits from the Arizona search were not used to indict Mr. James.

With regard to the grand jury transcript, James contends that the government's argument regarding his speculation only casts more doubt on its position and shows that an evidentiary hearing is needed. "Why does the government claim that Mr. James is speculating when the government could simply prove Mr. James wrong. Why does the government inform this Court that none of this unlawful and deceitful information was presented?" Reply at 6. The reply argues that the court should authorize the disclosure of the grand jury transcripts pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure.[3] He asks the court for disclosure because he has "proven a particularized need for the transcripts." *Id*. at 7. The discovery shows that the evidence against James heavily relies on the July 2015 investigation and it "seems extraordinarily unlikely that the government has not presented the evidence alleged within the Motion to Suppress

---

[3] Any reference to a "Rule" or "Rules" in this order refers to the Federal Rules of Criminal Procedure.

and Motion to Dismiss to the grand jury in order to substantially influence the grand jury's decision to indict." *Id*. Alternatively, James requests that he be permitted an evidentiary hearing.

For these reasons, Mr. James asks the court to grant his motion and dismiss the indictment.

# **DISCUSSION**

Pursuant to Rule 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions which must be made before trial. Among them is a motion to dismiss based on an error in the grand-jury proceeding. Fed. R. Crim. P. 12(b)(3)(A)(v).

A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987). In ruling on a motion to dismiss, the district court is "bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014). The court should not consider evidence that does not appear on the face of the indictment. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses. *Id.* ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence."). In addition, Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citation omitted). A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence. *Jensen*, 93 F.3d at 669 (citation omitted).

II. APPLICABLE LAW

A. Grand Jury Proceedings

The Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Fifth Amendment gives independent stature to the pre-constitutional tradition of the grand jury. *See United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977). A grand jury is tasked with the "gateway function" of determining whether there is probable cause to believe a

crime has been committed. *Kaley v. United States*, --- U.S. ----, 134 S. Ct. 1090, 1103 (2014).[4] Its role is related to those of the judicial branch and the prosecutorial arm of the executive branch, but the principle of grand jury independence is firmly rooted and jealously protected in the federal justice system. *See United States v. Williams*, 504 U.S. 36, 48 (1992). Because it is an independent investigative body, the federal courts have consistently accorded a grand jury "wide latitude to inquire into violations of criminal law" and avoid intrusion in its proceedings. *United States v. Calandra*, 414 U.S. 338, 343 (1974).

A grand jury proceeding is not an adversary hearing in which the accused's guilt or innocence is adjudicated; rather, "it is an ex-parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted." *Id*. at 343–44. The grand jury's investigative power must be broad in order to adequately discharge its public responsibility. *Id*. at 344. The grand jury shields individuals against unfounded accusations and protects the individual by requiring probable cause to indict. *See, e.g.*, *Williams*, 504 U.S. at 47, 51; *United States v. Dionisio*, 410 U.S. 1, 16–17 (1973); *Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972) ("The ancient role of the grand jury . . . has the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.").

### B. Dismissal of Indictment Based on Errors in Grand Jury Proceedings

The Supreme Court has long held that "an indictment valid on its face" is not subject to a challenge based on "the reliability or competence of the evidence presented to the grand jury." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (citing *Calandra*, 414 U.S. at 344–45); *see also United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974) ("[W]hen a duly constituted grand jury returns an indictment valid on its face, no independent inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision.") (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)). Challenging an indictment on these grounds

---

[4] Probable cause "is not a high bar: It requires only the kind of fair probability' on which reasonable and prudent people, not legal technicians, act." *Kaley*, 134 S. Ct. at 1103 (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotation marks and alterations omitted)); *see also United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005) ("All a federal grand jury needs to indict is 'probable cause'.").

7

would "invade the independence of the grand jury." *Basurto*, 497 F.2d at 785 (noting that its holding did not affect this "established rule"). Permitting defendants to challenge facially-valid indictments on the ground that they are not supported by adequate or competent evidence "would run counter to the whole history of the grand jury institution," and it is not required by "justice nor the concept of a fair trial." *Williams*, 504 U.S. at 54 (internal quotation omitted).

"As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia*, 487 U.S. at 254. "Under this standard, dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (internal quotation omitted). Dismissal of an indictment for prosecutorial misconduct "is considered a 'drastic step' and is generally disfavored as a remedy." *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (quoting *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993)). To demonstrate prejudice sufficient to warrant dismissal, prosecutorial misconduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. King*, 200 F.3d 1207, 1213 (9th Cir. 1999) (internal quotation omitted). A defendant "must prove that the government's conduct was 'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process'." *Unites States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996) (quoting *United States v. Garza–Juarez*, 922 F.2d 896, 904 (9th Cir. 1993)).

The mere fact that unreliable evidence was presented to a grand jury is not sufficient to show prejudice and require dismissal. *Bank of Nova Scotia*, 487 U.S. at 261 (citing *Costello*, 350 U.S. at 363); *United States v. Blue*, 384 U.S. 251, 255 (1966) (presentation of tainted evidence to a grand jury is not a basis for abating prosecution or barring it altogether). "Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial." *Calandra*, 414 U.S. at 349. Thus, dismissal is not an appropriate remedy where illegally seized evidence is presented to the grand jury. *Id*. at 349–52 (declining to extend the exclusionary rule to grand jury proceedings). Pursuant to *Calandra* and its progeny,

"the regular operation of generally applicable rules of procedure and evidence *at trial* is the appropriate remedy." *United States v. Renzi*, 651 F.3d 1012, 1027 (9th Cir. 2011).[5]

### C. Disclosure of Grand Jury Transcripts

The general rule of secrecy of grand jury proceedings is essential to its purpose. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958). Exceptions to the general rule are few. The court may authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "The district court is vested with substantial discretion in assessing a request for disclosure under Rule 6(e)." *In re Grand Jury Proceedings*, 62 F.3d 1175, 1180 (9th Cir. 1995) (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

A party seeking the disclosure must show a particularized and compelling need for the disclosure that outweighs the policy of grand jury secrecy. *Dennis v. United States*, 384 U.S. 855, 870 (1996); *In re Grand Jury Investigation*, 642 F.2d 1184, 1191 (9th Cir. 1981). Unsubstantiated speculative assertions of improprieties do not supply the particular need required to outweigh the policy of grand jury secrecy. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980).

### III. ANALYSIS

#### A. Mr. James Has Not Established a Due Process Violation in the Grand Jury Proceeding that Warrants Dismissal

James argues he is entitled to dismissal based on the government's concession not to use the evidence seized during execution of the Arizona hotel warrant. His arguments misconstrue the government's response to the suppression motion, the court's ruling, and applicable law. The government did not concede that *Franks* violations occurred when law enforcement officers

---

[5] *See also Blue*, 384 U.S. at 255 ("Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial."); *Costello*, 350 U.S. at 363 (concluding that an indictment premised on hearsay was not subject to challenge under the Fifth Amendment "on the ground that there was inadequate or incompetent evidence before the grand jury"); *Holt v. United States*, 218 U.S. 245, 247–48 (1910) (refusing to dismiss an indictment because "there was very little evidence against the accused" besides "admissions . . . obtained under circumstances that made them incompetent").

obtained the Arizona hotel warrant, nor did it agree that the suppression motion was meritorious. *See* ECF No. 254 ("*Without conceding the issues or suggesting agreement with the merits of the Motion*, the United States has decided it will not be using any of the items obtained from the search warrant during its case-in-chief at trial.") (emphasis added). The government merely advised the court it would not use evidence from the hotel warrant during its case-in-chief, rendering the suppression motion moot.

The court denied Mr. James' suppression motion as moot based on the government's representations and did not address the motion on its merits. However, the court precluded the government from using any evidence seized pursuant to the hotel warrant and any fruits derived from the search in its case-in-chief to enforce the government's agreement not to use this evidence. James therefore received the relief he requested in the motion to suppress. The court did not find any *Franks* violation had occurred. More importantly, even if the court had held an evidentiary hearing and determined that *Franks* violations occurred, James would still not be entitled to dismissal as a matter of law. Suppression, not dismissal, is the appropriate remedy for a Fourth Amendment violation. *See, e.g.*, *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1051–52 (D. Nev. 2006) (noting that "where evidence is seized or obtained in violation of defendant's constitutional rights, the suppression of the evidence, and not dismissal of the indictment is the appropriate remedy").

James' motion to dismiss primarily relies on *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974). There, the Ninth Circuit held that a defendant's due process rights are violated when he must stand trial on an indictment "the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." *Id*. at 785. James has made no showing that the government knowingly relied upon perjured testimony to obtain his indictment.

In *Basurto*, a government witness testified before the grand jury regarding the defendant's activities in marijuana smuggling. The grand jury returned an indictment based, in substantial part, on this witness' testimony. Before the trial, the witness informed the government that a substantial part of his testimony was untrue and he had committed perjury before the grand jury.

10

Although the government informed defense counsel of the perjury before trial, the court and the grand jury were not told. The trial proceeded on the indictment. The prosecutor informed the jury of the perjurious testimony before the grand jury during his opening statement but sought to minimize its scope and importance. The *Basurto* panel stated in dictum that when a prosecutor learns of perjury before the grand jury, he or she is "under a duty to immediately inform the court and opposing counsel— and, if the perjury may be material, also the grand jury— in order that appropriate action may be taken." *Id*. at 785–86.[6]

*Basurto* is clearly distinguishable from the facts of this case. There, the prosecutor was told by a key witness before trial that he had committed perjury important to the crime charged before the grand jury. It was undisputed that the defendant was indicted largely on the basis of this perjured testimony. The prosecutor informed defense counsel of the perjury before trial and informed the jury of the perjury in opening statements, although he attempted to minimize its' importance. The Ninth Circuit stated that the prosecutor should have informed the court of the perjury before trial noting that, at the time he learned of the perjury, jeopardy had not attached and the statute of limitations for the offenses charged had not run. *Id*. at 785. The panel reasoned that "if the prosecutor had brought the perjury to the court's attention before the trial commenced and the indictments had been dismissed, the Double Jeopardy Clause of the Fifth Amendment would not have barred trial under a new indictment." *Id*. Based on the undisputed facts in the record, the *Basurto* panel held that the Due Process Clause "is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the

---

[6] The Ninth Circuit has subsequently distinguished *Basurto* on its facts and clarified the standards for materiality and intentional prosecutorial misconduct in a number of decisions. *E.g.*, *United States v. Jones*, 968 F.2d 1222 (9th Cir. 1992) (rejecting defendant's argument under *Basurto* that a district court should have dismissed indictment because he presented no evidence establishing the prosecution *knew* the grand jury testimony was false); *United States v. Claiborne*, 765 F.2d 784, 791 (9th Cir. 1985) (citing *Basurto* among others and concluding that "if sufficient non-perjurious testimony exists to support the indictment, the courts will not dismiss the indictment due to the presence of perjured testimony before the grand jury"), *abrogated on other grounds by Ross v. Oklahoma*, 487 U.S. 81 (1988); *United States v. Bracy*, 566 F.2d 649, 654 (9th Cir. 1977) (distinguishing *Basurto* because the materiality of the perjured testimony in that case was "[b]eyond doubt"). More importantly, the Ninth Circuit has recognized that, even if the government has "an obligation to inform the court and defense counsel of its conclusion that a witness committed perjury, *dismissal of the indictment would not be an appropriate remedy for violation of that obligation.*" *United States v. Sitton*, 968 F.2d 947, 954 (9th Cir. 1992) (citing *Bracy*, 566 F.2d at 655–57) (emphasis added); *see also United States v. Harmon*, 833 F.3d 1199, 1204–05 (9th Cir. 2016).

perjured testimony is material, and when jeopardy has not attached." *Id.*

The Ninth Circuit has since acknowledged that *Basurto*'s articulation of the prosecutor's duty was dictum in *United States v. Sitton*, 968 F.2d 947, 954 (9th Cir. 1992) ("*Basurto*'s statement that the prosecutor has an obligation immediately to inform the court and opposing counsel of any perjury was dictum.").

In this case, Mr. James speculates that the government presented false or perjurious testimony from the affidavit supporting the hotel warrant application to the grand jury, and that the grand jury was substantially influenced by this evidence. "Speculation cannot justify this court's intervention into the grand jury's proceedings." *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987). The *Basurto* panel acknowledged that its holding did not affect the "established rule" that a defendant cannot challenge a facially-valid indictment returned by a duly constituted grand jury based on "the kind of evidence considered by the grand jury in making its decision." 497 F.2d at 785. James does not challenge the validity of the indictment on its face. Under well-established, controlling Supreme Court and Circuit precedent "no inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision." *Id.* (citing *Costello*, 350 U.S. at 363). As the Ninth Circuit acknowledged, to do so would "invade the independence of the grand jury." *Id*.

A Supreme Court case decided 14 years after *Basurto* reaffirmed long established precedent that an indictment valid on its face may not be challenged on the reliability or competence of evidence presented before a grand jury. In *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), the Supreme Court held that a district court may not ordinarily dismiss an indictment for errors in grand jury proceedings, and found the record did not support the district court's conclusion that the defendants were prejudiced by prosecutorial misconduct before the grand jury. The district court found that IRS agents gave false and misleading summaries to the grand jury, which prejudiced the defendant. The district court dismissed the indictment for this and other findings of prosecutorial misconduct. The government appealed. A divided panel of the Tenth Circuit reversed the district court and the Supreme Court granted certiorari. The defendants alleged and the district court had found that the prosecution violated the defendants'

Fifth and Sixth Amendment rights and engaged in multiple instances of prejudicial prosecutorial misconduct.

The Supreme Court first found that no constitutional error occurred before the grand jury.[7] With respect to the misleading and inaccurate IRS summaries presented to the grand jury, the Court held that there was "no ground for dismissing the indictment" because the record did not reveal any prosecutorial misconduct regarding the summaries. *Id.* at 260. The Supreme Court characterized the district court's finding about the IRS summaries as "a challenge to the reliability or competence of the evidence presented to the grand jury." *Id.* at 261. The *Bank of Nova Scotia* decision reaffirmed prior established precedent that "an indictment valid on its face is not subject to such a challenge," *id.* (citing *Calandra*, 414 U.S. at 344–45). It also reaffirmed that "the mere fact that evidence itself is unreliable is not sufficient to require dismissal of the indictment." *Id.* (citing *Costello*, 350 U.S. at 363).

Here, James' motion does not allege that prosecutors knew the hotel warrant affidavit contained false or misleading statements and presented false or perjurious statements to the grand jury anyway. Rather, the motion states the "government *is now on notice* that Mr. James' prosecution was infected with serious misconduct." Mot. at 4 (emphasis added), *see also* Mot. at 3 ("*Now, the government is fully aware* that the sworn affidavit was littered with what appears to be perjurous [*sic*] statements." (emphasis added)). The motion fails to allege, let alone provide any supporting facts that the prosecution has learned that the indictment was based on partially perjured testimony that was material to the indictment. The motion does not assert that the prosecution was aware that any of the evidence presented to the grand jury was false or perjurious or that the prosecution intentionally presented any evidence to mislead the grand jury. *See Fuchs*, 218 F.3d at 964 (rejecting dismissal argument because defendant presented no evidence to show prosecutor acted intentionally to mislead the grand jury).

Rather, James speculates that the government must have presented allegedly false and

---

[7] The defendants alleged that their Fifth and Sixth Amendment rights had been violated by post-indictment prosecutorial misconduct. The Tenth Circuit concluded the district court's findings in this regard were erroneous, and the Supreme Court agreed.

13

misleading statements from the hotel warrant affidavit to the grand jury. He reaches this conclusion based on his review of discovery produced by the government. However, even a cursory review of the discovery attached to the government's response shows James' involvement in the crimes charged in the indictment was documented in police reports before the hotel warrant was obtained. Reports generated by the Tempe Police Department indicate James was believed to be one of the individuals acting as lookouts conducting "counter surveillance" to assure no police were arriving while other coconspirators were engaged in trafficking in stolen vehicles. *See, e.g.*, Gov't Resp. Ex. 1 (ECF No. 278-1) at 6–8 (Tempe General Offense Report, Bates 028483–85). This same report indicates that James was arrested before the hotel warrant, which allegedly contained false and misleading statements, was obtained for the room at the Red Roof Inn purportedly associated with James.

The Supreme Court has repeatedly held that an indictment valid on its face is not subject to challenge based on the reliability or competence of evidence presented to the grand jury. Mr. James has not established that the government knowingly presented perjurious testimony to the grand jury that indicted him. James has not shown that his indictment was obtained based on false or perjurious testimony the government knowingly presented to the grand jury. Rather, his motion to dismiss is based on speculation that false, perjurious testimony must have been presented to the grand jury because the affidavit supporting the hotel warrant contains falsehoods, and because he believes that information obtained from the hotel warrant is critical to linking him to the conspiracy. James has not shown that the prosecution has engaged in any misconduct before the grand jury let alone that it engaged in misconduct so excessive, flagrant, scandalous, intolerable, and offensive to amount to a due process violation warranting dismissal. Accordingly, the court will recommend that James' motion to dismiss be denied.

**B. James Has Not Shown a Non-Speculative, Particularized Need for the Grand Jury Transcript**

The government filed a copy of the grand jury transcript under seal at the same time it filed the response, presumably to allow the court to review it *in camera* if deemed appropriate. *See* Sealed Exhibit (ECF No. 279). The response does not rely on sealed testimony to support the

government's arguments or discuss or cite any sealed testimony presented to the grand jury. The court has not reviewed the sealed transcript because under clear, longstanding precedent the court may not conduct an inquiry into the reliability, competence, or sufficiency of evidence presented to the grand jury on a facially-valid indictment. As the Ninth Circuit recognized in *Basurto*, to do so would "invade the independence of the grand jury." 497 F 2d. at 785.

In his reply, James argues the court should disclose the grand jury transcripts to him because the discovery shows that the evidence against James heavily relies on the July 2015 investigation and it "seems extraordinarily unlikely" that the government did not present evidence from the hotel warrant to the grand jury in order to substantially influence its decision to indict. Reply at 6. This assertion is unsubstantiated and speculative and therefore does not meet the particularized need standard required to outweigh the policy of grand jury secrecy. *See Walczak*, 783 F.2d at 857(request for grand jury transcripts was speculative and did not show particularized need where defendant requested transcripts to determine if officers' testimony improperly summarized testimony of other agents but alleged no supporting facts); *Ferreboeuf*, 632 F.2d at 835 (rejecting defendant's assertion of impropriety as speculation, based on speed with which the indictment was returned).

James claims that without the false statements in the affidavit supporting the application for the hotel warrant or the evidence recovered as a result of these false statements, the government lacked any evidence to link James to the crimes. Exhibits attached to James' suppression motion contradict this conclusion. *See* Suppression Mot. Exs. C–J (ECF No. 203-1). James' suppression motion attached over 20 pages of discovery from the Tempe and Mesa Police Departments' investigation, in addition to the hotel warrant and related documents. *See id.* The government attached more than 50 pages of discovery to its response to the current motion indicating James and his codefendants were under investigation and being surveilled, and that James was arrested before the hotel warrant was obtained. Gov't Resp. Ex. 1 (ECF No. 278-1) (surveillance reports, photos, notes, witness statements, summaries of witness statements, copies of fraudulent ads for the stolen vehicles, etc.). The discovery plainly shows the government possessed more than the fruits of the hotel warrant to link James to the charged crimes. James' arguments are wholly

speculative and he fails to show "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). James is not entitled to disclosure of grand jury transcripts based on his speculation that false or perjurious testimony or evidence illegally seized as a result of the hotel warrant may have been presented to the grand jury. His request for disclosure of the grand jury transcripts is therefore denied.

For the reasons explained,

**IT IS ORDERED:**

1. Defendants Demani Dancy, Keenan St. Hillaire, Channing Williams, and Korregan Washington's Motions for Joinders (ECF Nos. 268, 271, 274, 280) are **GRANTED**.
2. Defendant Everly James' request for disclosure of grand jury transcripts pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii) is **DENIED**.

**IT IS FURTHER RECOMMENDED:** that Defendant Everly James' Motion to Dismiss Indictment (ECF No. 267) be **DENIED**.

DATED this 4th day of May, 2018.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE